No. 83,897

In the Matter of THOMAS CALEB BOONE, *Respondent*.

(7 P.3d 270)

 Opinion filed June 16, 2000. 

*Frank D. Diehl*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the brief for petitioner.

*William A. Hensley*, of Turner & Boisseau, Chtd., of Wichita, argued the cause for respondent, and *Thomas Caleb Boone*, respondent, was with him on the brief.

*Per Curiam*: This is an original contested attorney discipline case filed by the office of the Disciplinary Administrator against Thomas Caleb Boone of Hays, Kansas, an attorney licensed to practice law in Kansas. The complaint alleged that Boone had violated KRPC 1.1 (1999 Kan. Ct. R. Annot. 284) (competence); KRPC 1.3 (1999 Kan. Ct. R. Annot. 294) (diligence); KRPC 3.1 (1999 Kan. Ct. R. Annot. 361) (meritorious claims and contentions); KRPC 3.2 (1999 Kan. Ct. R. Annot. 362) (expediting litigation); KRPC 3.4 (1999 Kan. Ct. R. Annot. 369) (fairness to opposing party and counsel); and KRPC 8.4(a), (d), and (g) (1999 Kan. Ct. R. Annot. 399) (misconduct).

A panel of the Kansas Board for Discipline of Attorneys (Panel) found that in six federal court cases and two state court cases, Boone had committed various violations of professional conduct, including filing frivolous lawsuits, disobeying court orders, failing to comply with court orders, and failing to dismiss nonmeritorious cases. The Panel found no violations of KRPC 1.1 or KRPC 8.46(a) or (g). The Disciplinary Administrator requested the Panel to recommend that Boone be indefinitely suspended from the practice of law. The Panel recommends that Boone be suspended from the practice of law for 2 years. The Panel further recommends that imposition of the discipline be suspended and Boone be placed on supervised probation for 2 years subject to terms and conditions.

FACTS:

Disciplinary Administrator Mark Anderson initiated the investigation into Boone's professional conduct upon receiving a copy of an order filed in United States District Court for the District of Kansas where United States Magistrate Judge John Thomas Reid ordered Boone to appear and show cause why he should not be held in contempt and referred to the Committee on Conduct of Attorneys and the Disciplinary Panel of the federal District Court to be suspended, disbarred, or otherwise disciplined for failing to obey the orders of the court. The Disciplinary Administrator appointed Brian Burris, an attorney practicing in Wichita, Kansas, to investigate Boone's professional conduct.

The federal court order which formed the basis for the investigation was issued in *Topliff v. Gross*, a medical malpractice case where Boone represented the plaintiff. The order stated that Boone had ignored deadlines set by the court, had failed to pay court-ordered sanctions imposed because of Boone's failure to respond to a motion to compel, and had failed to repay the defendant an amount of money ordered by the court. The federal court order referred to another case, *Paulie v. Cooperative Union Mercantile Company of Grinnell, Kansas*, where Boone had failed to meet deadlines and the federal district judge had advised Boone to file no more cases until he demonstrated an ability to meet the deadlines in cases already on file. The federal court order noted with disapproval that Boone had filed five additional cases after the *Paulie* order.

The Disciplinary Administrator instructed Burris to review the matters referred to in the *Topliff* order and the various cases referred to in the order and to expand his inquiry into Boone's cases to the extent necessary to complete the investigation. Burris contacted Boone. Boone cooperated fully in the investigation.

Burris searched the files in the federal District Court Clerk's office and reviewed the cases where Boone had represented parties. Documents from cases in which Burris identified possible disciplinary problems became exhibits in the disciplinary hearing. A synopsis of the Panel's findings and conclusions regarding those

cases and Boone's response to those findings and conclusions are set out.

### Berry v. Phillipsburg

Boone represented the plaintiff, Trudy Berry, in an action against the City of Phillipsburg, Kansas. The case was filed in the United States District Court for the District of Kansas on May 15, 1990, and rested on Berry's allegations of police misconduct. Federal Magistrate Judge Reid presided over the case. During the 4-month period set aside for discovery, Boone conducted no formal discovery and failed to comply with the City's requests for discovery. After the expiration of the discovery period, the City filed a motion to compel discovery. The federal judge granted the motion and entered an order to show cause as to why sanctions should not be assessed against Boone as a result of Boone's failure to reply to discovery and to the motion to compel. Boone did not respond to the show cause order.

More than 2 months after the close of discovery, Boone filed a motion seeking additional time to conduct discovery. Magistrate Reid denied the motion to reopen discovery. In an order filed September 4, 1991, Magistrate Reid ordered Boone to pay the costs of the City's motion to compel discovery, in the amount of $545.56.

An additional problem developed in the case because Boone failed to provide witness summaries to the City within the time deadline set in the scheduling order. On September 18, 1991, the City filed a motion to compel the production of the witness summaries. Without responding to the motion to compel and without filing a motion for additional time, Boone filed the witness summaries on September 20, 1991. Magistrate Reid found that Boone's failure to meet the deadline without a request for additional time was inexcusable, and costs were assessed against Boone in the amount of $391.10.

Discovery was reopened to permit the City to depose witnesses who were named for the first time in September 1991. As a result, the City incurred additional expenses. On April 24, 1992, the court ordered Boone to pay $4,500 for costs incurred by the City by the

delay in discovery. Boone paid $1,350 of the order pursuant to a payment plan set out in the order. The case was subsequently settled in a timely manner, and Magistrate Reid reduced the sanction to $2,500.

At the disciplinary hearing, Boone admitted that he did not conduct any formal discovery in the *Berry* case but that he moved the court for an extension of time for discovery as a precaution in the event that formal discovery would be required. Boone explained his informal discovery methods:

"[I]n a practice like mine where I represent mostly exclusively plaintiffs in civil cases, although I do represent some criminal defendants in my practice, that I have to rely upon a lot of informal discovery, a lot of methods to save expenses and a very good example of that is what I did in the *Berry* case by interviewing the mayor of the city and a police officer of the city ex parte, which I was allowed to do as a former mayor and a former police officer. . . . The mayor gave me a story that was just very favorable to the plaintiff, so that's a good example of how [informal discovery] was useful in that case. The Summary Judgment in that case was denied because of that use of the tool of the informal discovery that I used and I will say this, if I may: We were able to settle the case for forty-five thousand dollars which was ten thousand more than Lawton Nuss told me he'd ever paid for a civil rights case. That does not—I want the Court to know I take the full responsibility for everything I did, but I want the Court to know those things and I do want the Court to know that I believe that evidence is an example of my bona [fides] in relying upon informal discovery. If [informal discovery] were effective in such a situation to produce that type of settlement which, yes, I'll have to say is pretty high because she only had seven hundred dollars' worth of medical and bruises that only lasted for two weeks, no bleeding, no broken bones but if that were successful in that situation, surely there is no guarantee it would be successful in all subsequent situations, but I respectfully refer to that to indicate my bona [fides] in pursuing that route and in conceiving of that route for the purposes of preservation of and a deduction of evidence at the Summary Judgment stage to be able to survive a trial. I respectfully do refer to that for that reason and that is what I did tell Mr. Burris. I certainly did tell him that I've relied upon informal discovery and that I absolutely did tell him that I requested extensions of time when as a precautionary measure I thought perhaps if I want to do — if something else should pop up that I hadn't contemplated then I would have some time to pursue it. . . ."

The Panel found that in *Berry v. Phillipsburg*, Boone intentionally disobeyed the court's scheduling order, failed to respond to an order to show cause, and filed a frivolous motion.

Boone argues to this court, as he did to the Panel, that he did not file the motion to extend discovery without an intention to conduct discovery. He reiterates that although he was reasonably confident that formal discovery would not be necessary, he requested the additional time in the event that some of the informal discovery might lead to the necessity to conduct formal discovery. Boone asserts that his method of informal discovery was a conscientious choice made in an effort to save his client the expense of formal discovery.

Boone also takes exception to the Panel's finding that he intentionally disobeyed the court's scheduling order. He characterized his conduct as negligent rather than intentional.

### Miller v. Yuasa-Exide, Inc.

Boone represented the plaintiff in this sexual harassment and retaliatory discharge case. The case was filed in the United States District Court for the District of Kansas. Magistrate Reid presided over the case. After conducting minimal formal discovery during the 4 months set aside for discovery, Boone filed a request for an additional 60 days of discovery. Magistrate Reid granted the request but admonished Boone that no further extensions would be granted. In the next 60 days, Boone failed to conduct any formal discovery. At the end of the 60-day extension, Boone filed another motion for an extension of time. Magistrate Reid denied the motion. The case was subsequently settled.

At the hearing before the Panel, Boone stated that he filed the requests for additional discovery time as a precautionary measure, and he had no actual plans for additional discovery. The Panel found that Boone intentionally filed a frivolous motion.

Boone objects to the finding by the Panel that he filed a motion for additional discovery time without a plan to actually conduct additional discovery. He asserts, as he does in the *Berry* case, that he conducted informal discovery by interviewing witnesses and filed the motion for extension of time as a precaution in the event the informal discovery led to a need for formal discovery.

### Haselhorst v. Wal-Mart Stores, Inc.

Boone represented the plaintiff in this Americans with Disabil-

ities Act (ADA) case filed in federal court, with Magistrate Reid presiding. Boone's client had been fired by Wal-Mart prior to the effective date of the ADA. On July 7, 1995, Wal-Mart filed a motion for summary judgment. Boone filed a motion requesting additional time to respond. The court granted Boone's request, extending the deadline for response to October 5, 1995. On October 5, 1995, Boone filed a second request for additional time. The court denied the request, recalling that Boone had been admonished in another case that if in any case pending before the court Boone filed a motion for additional time on a date nearer to the deadline than 5 days, the motion would be denied. Accordingly, Boone's motion for additional time was denied, and Wal-Mart's motion for summary judgment was deemed submitted without a response. Prior to the decision regarding Wal-Mart's summary judgment motion, the case was dismissed with prejudice.

At the disciplinary hearing, Boone was confronted with settled law published prior to the summary judgment date which clearly indicated that the ADA is not retroactive. Boone explained to the Panel that his theory of the case was not a simple or straightforward theory of retroactivity. Boone stated that when his client was fired by Wal-Mart, he was advised that he would be allowed to reapply for employment within 6 months. Boone's client did reapply, and his application was rejected. Boone's theory was that the facts in the case represented a continuing act in violation of the ADA, which began prior to the effective date of the ADA and culminated after the effective date. Boone asserted that his unique retroactivity theory established a good faith basis for filing the case.

The Panel found that Boone intentionally filed a frivolous action and disregarded his duty to dismiss the case once he knew that the law did not support it.

Boone objects to the Panel's finding that he intentionally filed a frivolous claim. He states that he argued in *Haselhorst* for an extension, modification, or reversal of existing ADA law in the complaint where he asserted a "straddling" theory of retroactivity. He argues that he filed the case with the intent to monitor developing caselaw that would support the plaintiff's claims.

*Paulie v. Cooperative Union Mercantile Co. of Grinnell, Kansas*

Boone represented the plaintiff in this action brought under the ADA in the United States District Court for the District of Kansas. Magistrate Reid presided over the case. Problems developed in the case when Boone filed a motion requesting an additional 4 weeks to designate experts. In the order, Magistrate Reid recounted several cases where Boone had been admonished by the court to follow the orders of the court. Magistrate Reid granted Boone's motion for additional time, but ordered that no further extensions would be permitted in any case Boone had pending before the court. Boone failed to properly designate expert witnesses in the case, and the judge prohibited Boone from calling any experts at trial.

Boone appealed the order to Judge Belot, United States District Judge. In an order entered on April 3, 1996, Judge Belot not only affirmed Reid's order, but expanded the court's order to all cases pending before Judge Belot in which Boone was involved.

At the disciplinary hearing, Boone explained that at the outset of the case, his client was unable to finance expert witnesses. During the pendency of the case, Boone's client moved to Arkansas and obtained a new job. Boone believed that with the increased income from the new job, his client might be able to afford to hire an expert in the case. When his client was unable to pay an expert, Boone researched the contested issues and determined that an expert was unnecessary. The case settled with a satisfactory judgment in favor of the plaintiff.

The Panel found that Boone requested the additional time to designate an expert as a precautionary measure only and determined that the motion was frivolous.

Boone asserts to this court that the Panel's finding that he frivolously filed motions for an extension of time to designate expert witnesses is contrary to the record. He points to the transcript of the hearing before the Panel where he testified that at the time the extensions of time were requested, he believed that it might be necessary for experts to be designated, but *after* requesting the extension, he concluded that a defense against the defendants' ar-

gument that the plaintiff was not disabled would be successful without expert testimony.

*Topliff v. Gross*

Boone represented the plaintiff in this medical malpractice case. Magistrate Reid presided over the case. On January 18, 1996, the defendant filed a motion to compel discovery. Boone failed to respond to the motion. Pursuant to Rule 7.4 of the United States District Court for the District of Kansas, Magistrate Reid considered and decided the motion as uncontested and granted the motion. Magistrate Reid further provided in the order that Boone show cause why the court should not assess against Boone the reasonable expenses that the defendant incurred in making the motion, including attorney fees. Magistrate Reid set March 1, 1996, as the deadline for Boone to respond to the show cause order. In addition, the court ordered Boone to reimburse the defendant $2,000 for expert fees which had been incorrectly billed to and paid by the defendant.

On April 22, 1996, Magistrate Reid ordered Boone to pay to the defendant's attorney expenses of $1,587 incurred by the defendant in prosecuting the motion to compel. The deadline for payment of this amount was May 15, 1996. On May 31, 1996, Boone had not paid the court-ordered sanction, filed a request for an extension of time to pay, or filed an appeal of the order.

Magistrate Reid issued an order dated May 31, 1996, which ultimately became the impetus for this disciplinary proceeding. In the order, Magistrate Reid recounted Boone's history of failing to meet deadlines and the order in the *Paulie* case where Magistrate Reid had strongly advised Boone to file no more cases until he demonstrated an ability to meet the deadlines in the cases he currently had on file. Magistrate Reid also noted that in *Paulie*, Boone had been warned that the court would grant no further extensions of time in any of Boone's cases pending before the court absent the most compelling circumstances.

Magistrate Reid also noted in the order that Boone was delinquent in submitting a final pretrial order in the case. The final pretrial conference had been held on April 2, 1996. Boone had

made repeated promises since that date to the court and to the defendant regarding completion of the order, but, as of May 31, 1996, Boone had not delivered the completed order.

The May 31, 1996, order also stated that the $2,000 reimbursement for expert fees which Boone had been ordered on February 15, 1996, to repay to the defendant remained unpaid and Boone had filed no requests for extensions of time to make the payment. Magistrate Reid found that Boone had simply ignored a clear order of the court regarding the reimbursement.

In the order, Magistrate Reid found that Boone appeared to be incapable of handling the cases he had on file with the court, yet, in contravention of the express advice of the court, Boone had filed five new cases with the court in the month of May.

The May 31, 1996, order provided that Boone appear in person and show cause to the court why the *Topliff* case should not be dismissed or Boone be held in contempt and/or referred to the Committee on Conduct of Attorneys and the Disciplinary Panel of the federal Kansas District Court to be suspended, disbarred, or otherwise disciplined for continued failure to obey the orders of the federal court. A hearing to show cause was scheduled for June 18, 1996.

In an order dated June 27, 1996, Magistrate Reid set out the results of the show cause hearing. Regarding the order for Boone to pay defense counsel sanctions in the amount of $1,587 in connection with the motion to compel, Boone showed that the amount was paid on June 13, 1996. As to the overpayment of $2,000 in expert witness fees which Boone had been ordered to repay the defendant, Boone indicated that he thought that the amount was owed by his client, not by him. However, Boone acknowledged his responsibility in seeing that the amount was paid, and presented a check for the $2,000 at the hearing. The court then addressed the issue of the pretrial order which was provided to the court on June 15, 1996. Boone apologized for his failure to provide the order in a more timely manner and took full responsibility for not providing it sooner. Finally, Boone related to the court that he was in the process of withdrawing from all but five cases in federal court.

Magistrate Reid considered and declined to dismiss the *Topliff* case as a sanction. Magistrate Reid stated in the order:

"[T]he court finds that defendant has certainly suffered some prejudice from the failure of Caleb Boone to handle matters in a timely fashion, and from his failure to timely pay the monetary amounts ordered. However, Caleb Boone has now paid the amounts owing in full, and has now provided all the material necessary for this court to file the final pretrial order. Therefore, the actual prejudice, while real, is not severe. While the actions of Caleb Boone has interfered with the judicial process, his corrective actions have limited the amount of interference. From the hearing, the court determined that plaintiffs have no culpability in the actions of their counsel. Defense counsel even acknowledged that there is no culpability by the plaintiffs. Neither the plaintiffs nor their counsel had . . . been warned in advance of the May 31, 1996 order that dismissal would be a likely sanction for noncompliance. The final factor to consider is the efficacy of lesser sanctions. The court does not believe the conduct of plaintiff[s'] counsel to be willful; plaintiffs were completely unaware that their counsel was not complying with orders of this court or meeting various deadlines. Most importantly, plaintiffs and their counsel have now fully complied with the previous sanction orders, and plaintiff[s'] counsel has agreed to seek to withdraw from the vast majority of the cases in this court and has apologized for his behavior which led to the May 31, 1996 order. The court therefore finds that the payment of the financial sanctions, coupled with counsel's representation that he will seek to withdraw from most of his cases before this court, are sufficient penalties or corrective action at this time. Defense counsel, after reviewing the above factors, represented at the hearing that dismissal with prejudice does not seem warranted. Therefore, the court finds that dismissal is not an appropriate sanction at this time, and the court will therefore not recommend to the district court dismissal of this action."

As to the contempt proceedings for Boone's failure to comply with court orders, Magistrate Reid found that the conduct of Boone was not so egregious as to justify punishment for contempt. In light of the corrective actions taken by Boone, including compliance with orders of the court, Magistrate Reid did not file a complaint with the Disciplinary Panel of the Kansas District Court.

At the disciplinary hearing before the Panel, Boone explained that the $2,000 he had been ordered to reimburse the defendant was not an order to pay out of his own funds. The overpayment made by the defendant was the result of a surcharge by the expert witness referral service, which was later determined by the court to be excessive, and the court accordingly ordered that the unau-

thorized amount be reimbursed to the defendant. Boone's client was ultimately responsible for the reimbursement.

Based on the facts, the Panel concluded that in *Topliff*, Boone intentionally disobeyed several court orders and, as a result of the misconduct, the defendant suffered actual prejudice.

Boone takes exception to the Panel's finding that he intentionally disobeyed orders of the court. He asserts that his misconduct in this regard was negligent rather than intentional. Boone also objects to the Panel's finding that the defendant suffered actual prejudice as a result of Boone's misconduct. He states that the finding does not take into account that he took corrective actions to ameliorate potential prejudice to the defendant, and Magistrate Reid found that Boone's corrective actions satisfied the court that Boone should not be subject to discipline for misconduct.

### Rojas v. American Postal Workers Union

Boone represented the plaintiff in this employment discrimination suit filed in federal court. The case was filed on March 7, 1994. On May 15, 1995, the United States District Court for the District of Kansas dismissed the case without prejudice after issuing a show cause order for lack of prosecution which was not answered by Boone.

At the disciplinary hearing, Boone explained that he filed the *Rojas* case to comply with the 6-month statute of limitations under the National Labor Relations Act while, at the same time, he filed Title 7 claims at the administrative agency level. The cases were later consolidated.

The Panel found no ethical violations relative to the *Rojas* case.

### Johnson v. Ellis County

Boone represented the plaintiffs, owners of an exotic animal zoo, in an action to enjoin the enforcement of an ordinance prohibiting the operation of their business in Ellis County. The case was filed on October 24, 1994, in the United States District Court for the District of Kansas, with Magistrate Reid presiding.

On January 17, 1995, 2 days after the deadline to amend the pleadings, the judge issued an order granting the plaintiffs' motion to amend their complaint and to file a response to the defendant's

motion to dismiss. The judge gave the plaintiffs until January 20, 1995, to file an amended complaint. On January 24, 1995, 4 days after the extended deadline, the plaintiffs filed another motion to amend, providing no reason for the late filing of the motion. On February 1, 1995, Magistrate Reid issued an order denying the plaintiffs' motion to amend the complaint out of time. The case resulted in a settlement whereby the Johnsons were specifically excepted from enforcement of the ordinance.

The Panel found that Boone intentionally disobeyed the court's scheduling order and a court rule. Boone asserts to this court that his misconduct was not intentional but negligent.

### Edwards v. Ewing

Boone represented the plaintiff in this slip and fall case filed in the District Court of Phillips County, Kansas. The case was filed on January 13, 1996; Judge Charles E. Worden presided.

Boone failed to respond to requests for discovery and for production of documents. As a result, the defendants filed motions to compel. Finally, the defendants filed a motion to dismiss, alleging that Boone had failed to comply with time deadlines, had refused to comply with the court's orders concerning discovery, and had failed to prosecute the case.

The court scheduled a hearing on the defendants' motion to compel and motion to dismiss. The defendants and their attorney appeared. Neither Boone nor the plaintiff appeared. The court found that notice had been provided to Boone and ordered that Boone appear personally before the court on September 25, 1996, to show cause why the motion to compel and the motion to dismiss should not be granted.

Boone failed to appear at the September 25, 1996, hearing. At the disciplinary hearing, Boone testified that he was delayed by road construction and that he called to inform the court that he would be delayed. The court did not receive the message. Boone arrived at the courthouse after the court dismissed the case.

The Panel found that Boone intentionally disobeyed court orders. Boone takes exception to the Panel's finding that his miscon-

duct was intentional. He argues that facts establish that he was negligent in failing to comply with court orders.

*Shaw v. Coomes*

In this case, Boone represented the plaintiff against Coomes, Inc., the Farmer's National Bank, and two individual bank officers. The suit was filed in the district court of Phillips County, and Judge Charles Worden presided. The petition alleged that Francis Shaw and Rick Coomes entered into a contract to construct a building on land owned by Coomes. Shaw alleged that Coomes paid him $15,825 in the form of a check for a portion of the services rendered by Shaw. Shaw alleged that he accepted the check based on fraudulent promises made by the bank to Coomes that the bank would lend or deposit money into Coomes' bank account to cover the check. Shaw also alleged that the bank breached a contract to lend money to Coomes, arguing Shaw was a third-party beneficiary to that contract.

The bank filed a motion for summary judgment, which was denied. After the close of Shaw's evidence, the trial court dismissed all claims against the defendants as having no basis in fact or law. Facts defeating Shaw's claim included that the bank had not made an unconditional promise to loan Coomes the money to cover the check, but had made the promise upon the condition that Coomes would be able to convey a free and clear title to the bank on the mortgage, and, due to an IRS filing on the property, Coomes was unable to meet that condition. Shaw's claim against the bank defendants was also defeated as a matter of law. Shaw brought the suit as a third-party beneficiary of the bank's promise to Coomes regarding payment of the check. The court found that Shaw was not a third-party beneficiary but rather an incidental beneficiary and, as such, had no standing to bring the claim.

The defendants filed a motion for assessment of costs of frivolous claim against Boone, pursuant to K.S.A. 60-2007 (since repealed). The judge ordered Boone to pay the defendants' costs and attorney fees of $10,423.51. The judge denied Boone's motion for reconsideration. The issue was appealed to the Kansas Court of Appeals

where, in an unpublished *per curiam* opinion, the order to pay costs and fees was affirmed. The Supreme Court denied review.

At the disciplinary hearing, Boone asserted his good faith in bringing the case. To demonstrate the basis of his good faith, Boone referred the Panel to portions of depositions taken in the case upon which he based the theories of recovery in the case. Key to the issue of Boone's good faith in bringing the fraud claim against the bank was the question of whether a bank officer, Bob Kaup, represented to Coomes that the bank would unconditionally guarantee Coomes' bank account for the amount of the check.

Boone referred the Panel to evidence that Kaup had authority to make unsecured loans in amounts under $50,000. He pointed to a deposition in which Coomes stated that Kaup unconditionally guaranteed payment of the check. Boone testified to the Panel that at trial, Coomes unexpectedly changed her statement and testified that Kaup told her the check would be covered if she qualified for a loan. Boone further showed the Panel deposition evidence that Kaup received notice of the tax lien the day before he assured Coomes that the check would be paid by the bank.

The Panel found that Boone had filed a frivolous lawsuit and concluded that Boone had violated KRPC 3.1 in filing a claim against the bank and its officers when the claim was not supported by the facts or the law.

Boone takes exception to the Panel's finding that he filed a frivolous lawsuit. He points out that the trial court denied the defendants' motion for summary judgment and concludes that this fact establishes that the lawsuit was not frivolous.

## Panel Recommendation

The Panel recommends to this court that Boone be suspended from the practice of law for a 2-year period and that the discipline be suspended and a 2-year period of supervision be imposed. In making the recommendation, the Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (1991) (Standards). The Panel found that Boone had violated his duty to refrain from abusing the legal process by intentionally violating court orders and filing frivolous

claims. The Panel found that Boone's misconduct was intentional and that the defendants realized actual injury in the various cases where they incurred additional expenses in prosecuting motions to compel. The Panel noted that the defendants in *Topliff* were found to have suffered actual prejudice as a result of Boone's misconduct. Furthermore, the Panel found that the actions of Boone delayed and interfered with the administration of justice.

The Panel found aggravating factors, including the fact that misconduct occurred in multiple cases and Boone had substantial experience in the practice of law. Mitigating factors included the fact that Boone had not previously been disciplined, he had paid or made arrangements to pay all sanctions ordered in conjunction with the misconduct, he had been cooperative and forthright throughout the disciplinary process, he has a reputation for good character in the community, he had been sanctioned for the misconduct within the cases where the misconduct occurred, he displayed some degree of remorse through the disciplinary investigation and prosecution, and the cases where the misconduct occurred dated from 1991 to 1996, with no allegations of misconduct having been made since 1996. The Panel further found that Boone clearly knew that he was violating court orders and rules, causing injury, and interfering with legal proceedings.

The Disciplinary Administrator recommends indefinite suspension from the practice of law. The Panel recommends that the imposition of discipline be suspended and Boone be placed on probation for 2 years subject to supervision. Donald C. Staab, an attorney practicing in Hays, Kansas, has agreed to supervise Boone.

## DISCUSSION

In disciplinary matters, this court has a duty to examine the evidence and determine for itself the judgment to be entered. Although the report of the disciplinary panel is advisory only, it will be given the same dignity as a special verdict by a jury or the findings of a trial court and will be adopted where amply sustained by the evidence, where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony. *In re Berg*, 264 Kan. 254, 269, 955 P.2d 1240 (1998).

*Violations of KRPC 1.3*

KRPC 1.3 (1999 Kan. Ct. R. Annot. 294) provides that a lawyer shall act with reasonable diligence and promptness in representing a client. The Panel found that Boone had violated KRPC 1.3 in the *Berry, Miller, Haselhorst, Paulie, Topliff, Edwards,* and *Johnson* cases by failing to comply with court orders and discovery requests, failing to dismiss nonmeritorious cases, and failing to amend a complaint.

"Reasonable" denotes an objective standard by which to measure diligence and promptness. This court has held many times in both criminal and civil contexts that, normally, intent is not susceptible of direct or concrete proof; most often it must be inferred from the surrounding facts and circumstances. See, *e.g., Spivey v. Safeco Ins. Co.,* 254 Kan. 237, 249-50, 865 P.2d 182 (1993); *State v. Giddings,* 216 Kan. 14, 18, 531 P.2d 445 (1975). Therefore, whether Boone's lack of diligence and promptness was negligent or intentional, if it is determined from the circumstances that he did not act with reasonable diligence or promptness, he committed a violation of the disciplinary rules. Whether a violation was intentional or otherwise is, however, an aggravating or mitigating factor under the Standards. The Panel found that the intentional nature of Boone's violations was an aggravating factor. Boone argues that his actions were negligent rather than intentional.

Boone also contends that Magistrate Reid's conclusion that Boone had taken corrective actions sufficient to satisfy the judge that he had no need to report Boone to the Disciplinary Panel is res judicata that his actions did not rise to the level of disciplinary violations in *Berry, Miller, Haselhorst, Paulie, Topliff, Edwards,* and *Johnson.*

The decision by a judge to report or not to report a possible disciplinary violation is not binding on the Panel or on this court. As noted in the standard set out at the beginning of this discussion, in disciplinary matters, this court has a duty to examine the evidence and determine for itself the judgment to be entered.

*Violations of KRPC 3.1*

KRPC 3.1 (1999 Kan. Ct. R. Annot. 361) provides, in part, that

a lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law.

The Panel found that Boone had violated KRPC 3.1 in filing the *Haselhorst* and *Shaw* cases. In the *Haselhorst* case, Boone sought recovery in a case where his client was fired for reasons that under the ADA were illegal, however, because Boone's client was fired from his job prior to the effective date of the ADA, the ADA provided no cause of action. Boone filed the claim on a "continuing course of conduct" theory, a quasi-retroactive theory of the ADA, based on actions the employer took with respect to not rehiring the employee after the effective date of the ADA. In *Shaw*, Boone sought recovery for his client on a third-party beneficiary theory.

To the extent they are not inconsistent with the Kansas Rules of Professional Conduct or statutory or caselaw of Kansas, the Kansas Supreme Court adopted the preamble and comments accompanying the Model Rules of Professional Conduct. Rule 226 (1999 Kan. Ct. R. Annot. 278). The Annotated Model Rules of Professional Conduct 300 (4th ed. 1999) states that Model Rule 3.1, which is identical to KRPC 3.1, was conceptualized to address the same concerns as Rule 11 of the Federal Rules of Civil Procedure. Both Rules seek to achieve a balance between effective curtailment of frivolous and abusive claims without chilling the tenets of zealous advocacy or provoking a rash of sanctions, motions, and litigation over the Rules themselves. Annotated Model Rules of Professional Conduct 300. The Legal Background comment to Model Rule 3.1 states that Rule 3.1 is best analyzed in tandem with Rule 11 of the Federal Rules of Civil Procedure, which parallels Rule 3.1. Annotated Model Rules of Professional Conduct 303.

Rule 11 of the Federal Rules of Civil Procedure provides, in part:

"(b) *Representations to Court*. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support, or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence, or if specifically so identified, are reasonably based on a lack of information or belief."

The parties disagree regarding whether Rule 11/KRPC 3.1 violations should be judged under an objective or subjective standard. Boone urges this court to apply a subjective good faith standard to his conduct in filing the cases and conclude that he did not violate KRPC 3.1 because he filed the cases asserting theories that sought to modify or extend existing law. He argues, however, that even under an objective standard, his decision to file the cases was reasonable and not in violation of the rule.

In *Fankhauser v. Bank IV Emporia*, 251 Kan. 217, 219-20, 833 P.2d 1002 (1992), this court noted that the United States Supreme Court had found that Rule 11 imposes an objective rather than subjective standard. As KRPC 3.1 parallels Rule 11, an objective standard of conduct should apply to violations of the disciplinary rule.

Boone cites the notes on the 1993 amendment to Rule 11 with respect to the Panel's conclusion that he violated KRPC 3.1 in filing the *Shaw* case. In the notes on the 1993 amendments, the advisory committee addressed the Rule's provision that a filing or pleading in the court is certification that there is or likely will be evidentiary support for the allegations contained in the pleading. The note states clearly that a party, by filing a pleading, does not certify that the party will prevail with respect to the contentions regarding the facts. The note comments on the effect of summary judgment by stating that the fact summary judgment is rendered against a party does not necessarily mean that the party had no evidentiary support for its position. "On the other hand, if a party has evidence with respect to a contention that would suffice to defeat a motion for

summary judgment based thereon, it would have sufficient 'evidentiary support' for purposes of Rule 11."

The Panel found that in the *Shaw* case, Boone filed a claim against the bank and its officers when the claim was not supported by the facts or the law. If there was not any *basis in the law* for bringing the third-party beneficiary action under the facts alleged, the trial court would have granted the defendant's motion for summary judgment.

The dismissal of the case after the presentation of the plaintiff's evidence indicates that the *facts* did not support the legal claims made. To refute that conclusion at the disciplinary hearing, Boone presented depositions where witnesses made statements which provided a factual basis for the claims made in the petition. Boone pointed out that witnesses testified at trial differently than they had in depositions, thereby exposing the case to dismissal at trial for failing to present evidence sufficient to support the claims made. Therefore, it cannot be said that Boone filed the case without a reasonable factual basis for the claims.

Retired Judge Patrick F. Kelly testified on Boone's behalf at the disciplinary hearing. Relative to Boone's innovative approaches to cases, Judge Kelly stated,

"Caleb is an interesting person as it relates to his sensitivity to stated cases. In an ordinate way he practices out in Hays and yet he's as up-to-date in the kind of cases you see filed in the federal court as any lawyer you see in Wichita. I'm talking about the employment kind, the age and the sex and the race, all that kind of stuff, malpractice, car wrecks, the whole smear. So he would frequent my court in all of these areas. Many of them I would find he's kind of on the edge of breakthrough of some kind of a theory or a claim or a new extension of a doctrine or something and he was always running into problems with me on fulfilling those kind of prospects."

Judge Kelly explained that his cases were often subject to summary judgment because Boone was innovative and saw things the judge could not always see.

The Disciplinary Administrator contends that the Kansas Court of Appeals' affirmance of the attorney sanctions imposed in the *Shaw* case is res judicata regarding the issue of whether the claims brought in the case were frivolous. The Disciplinary Administrator

fails to note that the Court of Appeals' standard of review in *Shaw* was whether there was substantial competent evidence to support the trial court's finding that Boone did not assert the claims in good faith. To warrant a finding of misconduct, the charges must be established by clear and convincing evidence. Supreme Court Rule 211(f) (1999 Kan. Ct. R. Annot. 234).

As to the *Shaw* case, the Panel's conclusion that Boone had violated KRPC 3.1 in bringing the case is not supported by clear and convincing evidence. Although Boone's theory of the case was innovative and represented an extension of recognized theories of liability, it cannot be said that if the facts adduced at trial had supported the theory, Boone would not have been outside the bounds of ethical conduct to bring the action.

Regarding the *Haselhorst* case, the Panel concluded that Boone violated KRPC 3.1 because the facts supporting the ADA claim occurred prior to the effective date of the ADA and there exists caselaw clearly establishing that the ADA is not retroactive. The Panel's finding fails to take into account Boone's continuing course of conduct theory of the case. Undoubtedly, a continuing course of conduct theory of liability is an extension of existing law, but filing such a case is not an ethical violation.

The Disciplinary Administrator points out that the Comment to KRPC 3.1 provides that an action is frivolous if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification, or reversal of existing law.

Although Boone was able to make a good faith argument on the merits of the action to the Panel, he did not make such an argument to the trial court. As noted in the facts, Boone asked the trial court for several extensions of time to respond to the defendant's summary judgment motion, and the court finally denied Boone's motion for more time and considered the motion for summary judgment as submitted without response. Accordingly, the case was dismissed with prejudice. Boone's lack of a good faith argument to the trial court in support of his unique theory of the case is evidence that Boone filed a frivolous case in violation of KRPC 3.1.

## Violations of KRPC 3.2

KRPC 3.2 (1999 Kan. Ct. R. Annot. 362) provides that a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client. The Panel found that Boone had violated KRPC 3.2 in *Berry* (filing extensions for discovery time without a plan to conduct discovery), *Miller* (filing extensions for discovery time without a plan to conduct discovery), *Haselhorst* (requesting an extension of time to respond to a summary judgment motion in the hope that caselaw would develop to support the case), and *Paulie* (filing extensions for discovery time without a plan to conduct discovery).

Boone contends that the reasons he filed motions for additional time in each of the cases were reasonable and were not, therefore, ethical violations. He argues that he had a good faith belief in the necessity for filing the motions. He asserts that in the *Berry, Miller,* and *Paulie* cases, he filed motions for additional time to conduct discovery as a precautionary measure in the event informal discovery revealed areas where formal discovery was needed. In *Haselhorst,* Boone again argues that his request for more time to respond to the summary judgment motion was based on a good faith belief that caselaw might develop to support his continuing course of conduct theory.

## Violations of KRPC 3.4(c)

KRPC 3.4(c) (1999 Kan. Ct. R. Annot. 369) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists. The Panel found that Boone had violated KRPC 3.4(c) in *Berry, Miller, Haselhorst, Paulie, Topliff,* and *Edwards.*

Boone reiterates the argument made throughout his brief that his failure to obey court orders was not intentional but negligent conduct. This argument regarding intent was addressed in the discussion under KRPC 1.3 above.

## Violations of KRPC 3.4(d)

KRPC 3.4(d) (1999 Kan. Ct. R. Annot. 369) provides that a lawyer shall not make a frivolous discovery request or fail to make a

reasonably diligent effort to comply with a legally proper discovery request by an opposing party. The Panel concluded that Boone had violated KRPC 3.4(d) in *Berry, Topliff,* and *Edwards.*

Boone asserts that in *Berry* he attempted in good faith to provide extensive information to the defense counsel with respect to the identity and anticipated testimony of witnesses. He explains that he provided the witness information in the interrogatories filed in the case. Boone's assertion is contrary to the evidence in the case. (Magistrate Reid stated in the court order: "[P]laintiff's counsel has again failed to meet a deadline without any request for additional time. Such failure is inexcusable. . . . Plaintiff's counsel even stated to defense counsel that he was faxing the witness summaries on September 16, 1991, but then failed to fax the materials. Plaintiff's counsel did not mail the summaries to defendants' counsel until the motion to compel was filed.")

Boone submits that his actions in the *Topliff* case were not intentional or willful, and that Magistrate Reid's order declining to refer Boone for disciplinary action supports that conclusion.

Boone asserts that the Panel is incorrect in concluding that he failed to provide discovery to the defendants in the *Edwards* case. This is contrary to the evidence provided at the disciplinary hearing (defendant filed motion to compel and judge issued order dismissing the case with prejudice for failing to comply with discovery order).

## Violations of KRPC 8.4(d)

KRPC 8.4(d) (1999 Kan. Ct. R. Annot. 399) provides that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice. The Panel found that Boone violated KRPC 8.4(d) in *Berry, Miller, Haselhorst, Paulie, Topliff, Johnson,* and *Edwards.*

Boone contends that he did not violate KRPC 8.4(d) in *Berry* and *Miller* because, as he testified at the disciplinary hearing, he did not file motions for extension of discovery time in an effort to manipulate the court's calendar; he filed the motions in the abundance of caution that, if the need for formal discovery arose at the

close of informal discovery, he would have time to conduct formal discovery.

Boone contends that he did not violate KRPC 8.4(d) in the *Haselhorst* case because the Panel's conclusion is based on an incorrect finding that there exists published law contrary to his theory of the case. He again points out that his retroactive theory of the ADA case was not a traditional theory, but a continuing course of conduct theory which had not been addressed in caselaw.

Boone takes exception to the Panel's conclusion that he violated KRPC 8.4(d) in the *Paulie* case because there was no evidence that he filed a motion for additional time to designate expert witnesses without intent to so designate. He points out that he testified to the Panel that he intended to designate witnesses if he concluded that the defendant's defense would require experts to support his client's claim of disability. Because the defendant's defense did not so require and Boone's client was unable to expend the amounts required for experts, Boone chose to not designate experts.

Boone contends that Magistrate Reid's determination in *Topliff* that Boone's corrective actions in that case satisfied the judge that he need not report Boone to the Disciplinary Administrator is contrary to the Panel's conclusion that he violated KRPC 8.4(d) in the *Topliff* case.

Boone takes exception to the Panel's conclusion that he violated KRPC 8.4(d) in the *Edwards* case because the conclusion is contrary to the Panel's findings of fact. Specifically, Boone points out that the Panel found that he missed the court appearance because he was delayed by road construction and that he attempted to notify the court of his delay by telephone but was unsuccessful. He argues that this fact can only result in a conclusion that he acted in good faith and reasonably, not in violation of an ethical rule.

While Boone is correct as to the instance in *Edwards* where he failed to appear in court on the show cause order, Boone fails to note that the Panel found that Boone also failed to appear at the hearing on a motion to dismiss which resulted in the order to show cause. That fact alone supports the Panel's finding.

## DISCIPLINE

Boone requests that this court order admonition or censure based on his contention that his conduct was negligent rather than willful or intentional and based on the mitigating factors found by the Panel. In the alternative, Boone requests this court to adopt the recommendation of the Panel to impose probation with supervision as discipline.

We adopt the Panel's findings as modified herein and find by clear and convincing evidence that Boone has violated KRPC 1.3, KRPC 3.1, KRPC 3.2, KRPC 3.4(c) and (d), and KRPC 8.4(d).

IT IS THEREFORE ORDERED that imposition of discipline against respondent, Caleb Boone, be suspended and that he be placed on probation for a period of 2 years from June 9, 2000, on the terms and conditions hereinafter set out:

1. Boone shall be supervised by Donald C. Staab, Attorney at Law, of Hays, Kansas. Staab shall be acting as an officer of the court and as an agent of the court as supervisor of probation in monitoring the legal practice of Boone. Staab shall be afforded all immunities granted by Supreme Court Rule 223 (1999 Kan. Ct. R. Annot. 269) during the course of his activities as directed by this order. Boone will allow Staab access to his files, his employees, his trust account, and his doctors. Staab shall act periodically at such intervals as he deems appropriate, or as directed by the Disciplinary Administrator, and monitor the following: (a) the status of each case on Boone's case list; (b) Boone's docketing system; (c) Boone's management of discovery; (d) Boone's trust account; and (f) the views of the local judges as to their evaluation of Boone's performance.

2. Throughout the probationary period, Boone shall meet with Mr. Staab on the first and third Wednesdays of each month at 8 a.m. in Mr. Staab's office.

3. During Boone's meetings with Mr. Staab, Boone shall disclose whether he has failed to timely respond to requests for discovery, to motions to compel, or to orders to show cause.

4. Boone shall disclose whether he has otherwise engaged in conduct that is in violation of the Kansas Rules of Professional Conduct.

5. Boone shall maintain a comprehensive calendar of court appearances, discovery deadlines, and other pleading deadlines. Boone shall allow Mr. Staab access to the calendar to review the entries.

6. Every quarter, Boone shall provide a written report to Mr. Staab regarding the status of each of Boone's cases.

Mr. Staab shall provide a quarterly report to the Disciplinary Administrator regarding Boone's compliance with the terms of probation.

In the event that Boone violates any of the terms of probation or provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, Mr. Staab shall immediately report such violation to the Disciplinary Administrator.

IT IS FURTHER ORDERED that if Boone fails to abide by the conditions set forth herein, a show cause order shall issue to Boone, and we will take whatever disciplinary action appears just and proper without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that costs herein be assessed to Boone.

LARSON, J., not participating.

GARY W. RULON, J., assigned. [1]

---

[1] **REPORTER'S NOTE:** Judge Rulon, Judge of the Kansas Court of Appeals, was appointed to hear case No. 83,897 vice Justice Larson pursuant to the authority vested in the Supreme Court by K.S.A. 20-3002(c).