No. 89,372

## In the Matter of THOMAS CALEB BOONE, *Respondent.*

66 P.3d 896

Opinion filed April 18, 2003.

*Frank D. Diehl,* deputy disciplinary administrator, argued the cause and was on the brief for petitioner.

*Kenneth H. Morton,* of Schroer, Rice, P.A., Topeka, argued the cause and was on the brief for respondent, and *Thomas Caleb Boone,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Thomas Caleb Boone of Hays, an attorney licensed to practice law in Kansas.

## Disciplinary Panel's Findings of Fact and Conclusions of Law

A disciplinary panel of the Kansas Board for the Discipline of Attorneys conducted a formal hearing, as required by Kansas Supreme Court Rule 211 (2002 Kan. Ct. R. Annot. 260), and considered evidence regarding Boone's conduct in handling matters for four individuals: Jerome Simoneau, Elma Augustine, Stephen Ball, and Doris Larsen. In its report, the panel concluded there was clear and convincing evidence Boone had violated Kansas Rules of Professional Conduct (KRPC) 1.3 (2002 Kan. Ct. R. Annot. 328) (diligence); KRPC 1.4 (2002 Kan. Ct. R. Annot. 340) (communication); KRPC 3.1 (2002 Kan. Ct. R. Annot. 406) (meritorious claims and contentions); and KRPC 4.2 (2002 Kan. Ct. R. Annot. 428) (communication with person represented by counsel). The panel unanimously recommended probation as the sanction.

In summary, the disciplinary panel made the following findings of fact and conclusions of law.

### Simoneau Complaint

Jerome Simoneau, a paraplegic, retained Boone to file suit and seek damages for soft tissue injuries sustained in an automobile accident. Boone failed to return calls to Simoneau at various times during the pendency of the litigation. At one point, Boone advised

Simoneau a settlement conference was scheduled on a particular day. When Simoneau and his personal attendant arrived for the conference, they learned that no conference had been scheduled.

In fact, Boone did not engage in settlement negotiations during the first 2 years the lawsuit was pending. The reason for this delay was never explained to the disciplinary panel. Consequently, the panel concluded that Boone violated KRPC 1.3, which requires an attorney to act with reasonable diligence and promptness in representing clients. Additionally, the panel found that Boone had violated KRPC 1.4(a), which provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." 2002 Kan. Ct. R. Annot. 340.

### Augustine Complaint

On October 27, 1995, Boone filed suit on behalf of Elma Augustine against an attorney, the attorney's firm, an accountant, the accountant's firm, and Charles Haynes. After completion of discovery, the attorneys and the accountants filed motions for summary judgment which were granted by the United States District Court for the District of Kansas. *Augustine v. Adams*, No. 95-2489-GTV, 1997 WL 298451 (D. Kan. May 2, 1997). Boone dismissed the action against the remaining defendant, Haynes, without prejudice, and appealed the summary judgment decision. However, the appeal was dismissed by the Tenth Circuit Court of Appeals after it held Boone could not use the voluntary dismissal of Haynes as an avenue to gain the right to appeal the summary judgment order which did not dismiss all defendants and, therefore, was not a final, appealable order. *Augustine v. Adams*, Case No. 97-3261, 1998 WL 422040 (10th Cir. July 22, 1998).

On September 19, 1998, Boone filed a second action asserting the same claims against the same parties. The attorneys and the accountants filed motions for summary judgment which were granted by the United States District Court for the District of Kansas on the grounds that the claims were barred by res judicata, collateral estoppel, and the statute of limitations. *Augustine v. Adams*, 88 F. Supp. 2d 1166, *reh. denied* 2000 WL 528035 (D. Kan.

2000). Also, the United States District Court concluded that Boone should be sanctioned because the claims, defenses, and legal contentions presented were not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. 88 F. Supp. 2d at 1174. Regarding Boone's argument that the summary judgment motions merely amounted to "reprocessing" of the previous motions in the attorneys' computer and not to any substantial new legal work, the court found: "This argument not only lacks merit, it is a bald-faced misstatement of the truth to this court." 88 F. Supp. 2d at 1174.

Relying upon these findings, the disciplinary panel concluded that Boone had violated KRPC 3.1, which states: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." 2002 Kan. Ct. R. Annot. 406.

### Ball Complaint

In July 1995, Stephen Ball suffered from an apparent episode of heat exhaustion while at work. Medical tests were ordered, including a treadmill test during which Ball injured his knee. As a result of the knee injury, Ball was unable to work for approximately 3 months.

In May 1996, Ball retained Boone to represent him on the workers compensation claim. Also, Ball asked Boone to look into filing a claim against the physician who performed the treadmill exam. Boone promptly took action to file the claim and start the investigation, but did not thereafter pursue the claims with diligence. Consequently, on February 5, 1997, the administrative law judge wrote Boone informing him that the case would be placed on the inactive docket until a response was received.

Whenever Ball contacted Boone about the status of the case, Boone reported that the case was "in litigation." With the passage of time, Ball forgot about the workers compensation claim and the unpaid medical expenses. Then, in May 2000, Ball was denied a federally guaranteed loan because of the unpaid medical bills from

1995. Ball investigated and learned that a collection agency had been in contact with Boone or his secretary at least every 90 days since 1996. Each time, Boone or his secretary advised the collection agency that the matter was still in litigation. Learning of this, Ball attempted to contact Boone with whom he had not had any contact for 3 years. Ball was repeatedly told that Boone was out of town. Ball contacted the Workers Compensation office to find out when the matter would be resolved and learned that the matter had been "inactive" for more than 3 years.

The disciplinary panel concluded that Boone failed to provide diligent representation to Ball. Again, the panel concluded Boone violated KRPC 1.3, requiring an attorney to act with reasonable diligence and promptness in representing clients, and KRPC 1.4(a), requiring an attorney to keep a client reasonably informed regarding the status of a matter and to comply with reasonable requests for information.

### Larsen Complaint

On March 12, 1999, Harry Larsen died. At the time of his death, Harry Larsen had four living children: Doris Larsen, Barbara Little, Sharon Larsen, and Trudy Berry. Doris Larsen was appointed the executrix of Harry Larsen's estate; she retained Richard Dietz as the attorney for the estate. At 4:55 p.m., on March 12, 2001, without first obtaining Dietz' permission, Boone called Doris Larsen. Doris Larsen was familiar with Boone because Boone had represented Trudy Berry for a period of time. During the telephone conversation, Boone mentioned filing a lawsuit alleging medical malpractice in the death of Mr. Larsen. At 5:05 p.m., Boone filed a petition, via facsimile transmission, alleging medical malpractice in the death of Mr. Larsen. Boone listed Trudy Berry and Doris Larsen as plaintiffs. On May 4, 2001, Boone dismissed the action with prejudice.

Because Boone contacted Doris Larsen without first obtaining the consent of Mr. Dietz, the disciplinary panel concluded that Boone had violated KRPC 4.2, which prohibits an attorney from contacting a person if the attorney knows the person is represented

by counsel and the attorney has not received the consent of the person's counsel.

*Disciplinary Panel's Recommendation Regarding Discipline*

Having found that Boone violated KRPC 1.3, 1.4, 3.1, and 4.2, the disciplinary panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions. Applying Standard 3, the panel considered the duty violated, the lawyer's mental state, the potential or actual injury caused by the misconduct, and the existence of aggravating or mitigating factors. The disciplinary panel found that Boone knowingly violated his duty to his clients by failing to provide diligent representation and reasonable communication. Further, the panel concluded that Boone violated his duty to the legal system by filing a frivolous suit, by contacting a represented party, and by soliciting a client. These violations resulted in injury or potential injury which the panel detailed.

Next, the disciplinary panel found that there were several aggravating factors. First, the panel noted that Boone was currently on probation for violations of KRPC 1.3 (diligence); KRPC 3.1 (meritorious claims and contentions); KRPC 3.2 (2002 Kan. Ct. R. Annot. 408) (expediting litigation); KRPC 3.4 (2002 Kan. Ct. R. Annot. 416) (fairness to opposing party and counsel); and KRPC 8.4 (2002 Kan. Ct. R. Annot. 409) (misconduct). *In re Boone,* 269 Kan. 484, 507, 7 P.3d 270 (2000). Second, the panel found there was a pattern of misconduct because Boone committed multiple offenses, violating four rules of professional conduct with repeated violations of two rules. Third, the panel found that Boone had substantial experience in the practice of law. Finally, the panel found that Boone had shown an indifference to making restitution to Ball.

Several mitigating circumstances were also noted by the disciplinary panel. The panel found there was no evidence that Boone was motivated by dishonesty or selfishness when he committed the misconduct. The panel noted the testimony of Boone's psychologist who testified that Boone had personal problems which contributed to the misconduct in this case. Finally, the panel noted that Boone

had been ordered to pay $2,500 in sanctions in the Augustine matter.

After considering these factors, the disciplinary panel unanimously recommended that Boone's probation be extended an additional 5 years on the same terms as presently in place. The panel noted that it was making the recommendation that probation be continued, rather than recommending that Boone be suspended, in part because of the recommendation of the Deputy Disciplinary Administrator.

### Boone's Exceptions to the Report and the Stipulation

Pursuant to Supreme Court Rule 212(c) (2002 Kan. Ct. R. Annot. 266), Boone took exception to some of the findings of the panel with regard to the harm caused by his action and his attitude towards making reparation. First, Boone took exception to the portion of the report in which the panel found that Boone's actions had injured Ball because it caused him to be unable to obtain a governmental farm loan with a lower rate of interest than the loan obtained by Ball. The panel calculated Ball would pay $44,045 more in interest payments than he would have paid under the governmental farm loan. Boone argued that the record did not establish that the harm to Ball's credit was solely as a result of Boone's actions. Also, Boone argued that it was speculation to say that Ball would pay $44,045 in additional interest payments since it was possible the loan could be refinanced or other future events could affect the amount paid. The office of the Disciplinary Administrator agreed and stipulated that the record did not support the findings regarding Ball's loss.

Boone also took exception to a conclusion that Boone had taken no steps to remedy his misconduct in the Ball matter. Through the stipulation, the office of the Disciplinary Administrator agreed that Boone had offered to make restitution to Ball in the amount of the medical bills.

Boone did not take exception to any other findings, conclusions, or the recommendation of the hearing panel.

## Analysis of the Panel's Findings, Conclusion, and Recommendation

In disciplinary matters, this court must examine the evidence and determine the judgment to be entered. In doing so, the findings of fact, conclusions of law, and recommendations made by the disciplinary panel are advisory only, but will be given the same dignity as a special verdict by a jury or the findings of a trial court. The disciplinary panel's report will be adopted where amply sustained by the evidence, but not where it is against the clear weight of the evidence or where the evidence consisted of sharply conflicting testimony. See *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993); *In re Farmer*, 242 Kan. 296, 299, 747 P.2d 97 (1987); *State v. Zeigler*, 217 Kan. 748, 755, 538 P.2d 643 (1975); *State v. Klassen*, 207 Kan. 414, 415, 485 P.2d 1295 (1971). We apply these rules in considering the evidence, the findings of the disciplinary panel, and the arguments of the parties in making our determination of whether violations of KRPC exist, and, if they do, deciding upon the appropriate discipline to be imposed. *In re Berg*, 264 Kan. 254, 269, 955 P.2d 1240 (1998).

Most of the disciplinary panel's report was admitted to by Boone. See Supreme Court Rule 212(c) (2002 Kan. Ct. R. Annot. 266) ("Any part of the hearing report not specifically excepted to shall be deemed admitted."). Boone did not take exception to any findings relating to violations of the rules of professional conduct. Clear and convincing evidence supported the disciplinary panel's findings, and we conclude that Boone violated KRPC 1.3, 1.4, 3.1, and 4.2.

As discussed above, the office of Disciplinary Administrator, through the stipulations, essentially concurred with Boone's objections regarding the aggravating and mitigating factors to be considered in imposing discipline. We accept the stipulations and adopt all other factual findings and conclusions of the panel regarding Standard 3.

Without minimizing the consideration of other factors to be considered in determining sanctions, some of the aggravating and mitigating circumstances warrant discussion. Boone's past history of

disciplinary actions is a significant aggravating factor. As previously noted, in 2000 Boone was placed on probation for violations that arose from Boone's conduct in six federal and two state court cases in which Boone failed to conduct discovery in a timely fashion, failed to respond to discovery requests, violated court orders, and filed frivolous claims. See *In re Boone*, 269 Kan. at 507. Less than 1 year later, this court issued an order to show cause why Boone's supervised probation should not be revoked. Formal proceedings were conducted after the Disciplinary Administrator alleged Boone had not complied with discovery requests and had continued a pattern of failing to appear in court. This court found violations of the conditions of probation and, effective July 13, 2001, extended Boone's probation by 3 years.

However, the chronology of events is significant in considering discipline. Three of the matters at issue in this case arose before June 9, 2000, the date on which Boone was originally placed on probation. One, the Larsen complaint, occurred after the original probation was imposed but before the July 13, 2001, order of this court which extended the term and modified the conditions of the probation. Since these complaints arose, Boone has significantly modified his practice and has diligently pursued treatment for his personal problems.

Considering these and the other factors discussed by the disciplinary panel, a majority of the court accepts the disciplinary panel's recommendation of an extension of probation while a minority of the court would impose a harsher discipline. However, the conditions of probation are modified and additional conditions are imposed.

IT IS THEREFORE ORDERED that imposition of discipline against respondent, Thomas Caleb Boone, be suspended and that he be continued on probation for the term ordered by this court on July 13, 2001, and for a period of an additional 5 years after the expiration of the probation ordered by this court on July 13, 2001, on the terms and conditions hereinafter set out:

1. Boone shall be supervised by Donald C. Staab, Attorney at Law, of Hays, Kansas. Staab shall be acting as an officer of the

court and as an agent of the court as supervisor of probation in monitoring the legal practice of Boone. Staab shall be afforded all immunities granted by Supreme Court Rule 223 (2002 Kan. Ct. R. Annot. 299) during the course of his activities as directed by this order. Boone shall allow Staab access to his files, his employees, his trust account, and his doctors. Staab shall act periodically at such intervals as he deems appropriate, or as directed by the Disciplinary Administrator, and monitor the following: (a) the status of each case on Boone's case list; (b) Boone's docketing system; (c) Boone's management of discovery; (d) Boone's trust account; and (e) the views of the local judges as to their evaluation of Boone's performance.

2. Boone will not determine whether representation will be undertaken for a prospective client; instead, his father, Thomas Clayton Boone (hereinafter Thomas Boone), will determine whether Thomas Caleb Boone (Boone) undertakes representation of prospective clients.

3. Boone will not represent clients in any of the following types of cases: (a) employment cases; (b) civil rights cases; (c) medical malpractice cases; (d) products liability cases; and (e) federal cases.

4. Boone shall maintain a comprehensive calendar of court appearances, discovery deadlines, and other pleading deadlines. Boone shall allow Staab and Thomas Boone access to the calendar to review the entries. Thomas Boone shall regularly monitor Boone's calendar. Boone shall be responsible for ensuring that a secretary is employed (either by himself or Thomas Boone) to monitor his calendar. The secretary shall be instructed to check the calendar every morning and remind Boone of impending deadlines. Boone shall authorize and ensure that the secretary report sto Thomas Boone any time Boone fails to meet a deadline. Boone shall also report any failures to Thomas Boone, Staab, and to the office of the Disciplinary Administrator. Thomas Boone is required to report any and all such failures immediately to the office of the Disciplinary Administrator.

5. Throughout the probationary period, Boone shall meet with Staab on the first and third Wednesdays of each month at 8 a.m. in Staab's office.

6. Boone shall continue with psychotherapy and/or any psychiatric treatment recommended to him by any medical or mental health professional. Boone shall provide all mental health treatment providers with an appropriate release of information and direct the provider to send all records or a quarterly report to the office of the Disciplinary Administrator.

7. Boone shall obtain and continue in effect professional liability insurance. Boone shall provide Staab and the Disciplinary Administrator with proof of the insurance coverage and shall notify them immediately in the event of any change or cancellation of the policy.

8. Every quarter, Boone shall provide a written report to Staab regarding the status of each of Boone's cases.

9. Staab shall provide a quarterly report to the Disciplinary Administrator regarding Boone's compliance with the terms of probation.

10. Boone shall disclose to the office of the Disciplinary Administrator any material change of circumstances, such as a change in his treatment regimen or the inability of Staab or Thomas Boone to carry out their respective roles under this order. Boone shall also disclose whether he has engaged in conduct that is in violation of the Kansas Rules of Professional Conduct.

11. In the event that Boone violates any of the terms of probation or provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, Staab and Thomas Boone shall immediately report such violation to the Disciplinary Administrator.

IT IS FURTHER ORDERED that if Boone fails to abide by the conditions set forth herein, a show cause order shall issue to Boone, and this court will take whatever disciplinary action appears just and proper without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that costs herein be assessed to Boone.

ABBOTT and NUSS, JJ., not participating.

GARY W. RULON, C.J., and DAVID S. KNUDSON, J., assigned■